RICHARD RILEY, APPELLANT, *v.* THE STATE OF NEVADA, RESPONDENT.

No. 5253

June 13, 1967                                    429 P.2d 59

*Charles L. Kellar,* of Las Vegas, for Appellant.

*Harvey Dickerson,* Attorney General, Carson City; *George E. Franklin, Jr.,* District Attorney, and *Earl P. Gripentrog,* Deputy District Attorney, of Las Vegas, for Respondent.

## OPINION

By the Court, THOMPSON, C. J.:

A jury convicted Riley, an adult Negro male, of three crimes upon the person of Monna Mitchell, an adult, white

female: second degree kidnaping, rape, and assault with intent to kill. Riley's appeal does not challenge the sufficiency of the evidence to support the convictions. He does contend, however, that he was denied a public trial in violation of the Sixth Amendment to the Federal Constitution; that he was seriously prejudiced by not having a grand jury transcript for trial use; and that the trial judge and prosecutor each exhibited a racial bias in presiding over and presenting the case thereby precluding any possibility of a fair trial.[1] We have concluded that none of these claims has merit, and affirm.

1. Public trial. About 40 spectators were in the courtroom when the victim was called to testify as a part of the State's case in chief. She had not yet described the act of intercourse but the stage was set for that story. She was asked to identify the defendant whereupon she lost her composure, and started to tremble and cry. The court recessed. The witness, attended by the court reporter and clerk, both females, was taken to another room, administered a tranquillizer, and made as comfortable as possible. She returned to the courtroom about ten minutes later. Meanwhile she had advised the court of her desire to have the courtroom cleared before proceeding with her testimony. Over the objection of defense counsel the courtroom was cleared except for two newspaper reporters who were allowed to remain. The victim then testified to the details of the rape and related circumstances. The public was re-admitted for the balance of the trial. The same ground covered by the witness in her testimony, was again related by her later during the trial when the public was present. She was apparently able to recover her composure and repeat the lurid tale before all who were then present and wished to listen.

The Nevada Constitution does not contain a speedy and public trial provision. Oberle v. Fogliani, 82 Nev. 428, 420 P.2d 251 (1966). That right is legislatively granted in this state. NRS 169.160(1). Of course, the Sixth Amendment to the Federal Constitution provides that "In all criminal prosecutions the accused shall enjoy the right to a speedy and public trial." The speedy trial requirement was recently extended to state cases (Klopfer v. North Carolina, 386 U.S. 213, decided March 13, 1967, and holding that a state may not indefinitely postpone prosecution of an indictment without stated justification over the objection of an accused who has been discharged

---

[1]Two additional errors are assigned but cannot be considered since an appropriate record to allow review was not made.

from custody), but the public trial provision has not yet been so extended (Gaines v. Washington, 277 U.S. 81 (1928)), and its vitality at the moment is restricted to federal court trials. However, we share the view expressed in United States v. Herold, 246 F.Supp. 363 (1965), that this protection will join other Sixth Amendment safeguards (Gideon v. Wainwright, 372 U.S. 335 (1963), right to counsel; Pointer v. Texas, 380 U.S. 400 (1965), right to confrontation; Klopfer v. North Carolina, supra, right to a speedy trial) as a fundamental right applicable to state court cases. Accordingly, we shall treat this claim of error as one resting upon a federal right applicable to a state criminal trial.

The right to a public trial is deeply rooted in our history. We distrust secret inquisitions. United States v. Consolidated Laundries Corp., 266 F.2d 941, 942 (2 Cir. 1959). The presence of spectators guards against the possible abuse of judicial power, In re Oliver, 333 U.S. 257 (1948), and tends to assure trustworthy testimony, People v. Jelke, 123 N.E.2d 769 (N.Y. 1954). Indeed, a witness, unknown to either side, but possessing valuable information, may be drawn to a public trial, and by his mere presence affect the testimony of a witness against the accused. Tanksley v. United States, 145 F.2d 58 (9 Cir., 1944). These are the main supportive reasons for the constitutional right to a public trial, and if these reasons for the right are honored, the right itself is not violated.

In the matter at hand we find no violation of the federal safeguard to a public trial. This trial was not a secret inquisition. There is no suggestion of an abuse of judicial power. The exclusionary order was not absolute. News reporters were allowed to remain. The victim's testimony was repeated when the court was open to the public, and the reiteration was in harmony with her prior story. Spectators were excluded temporarily until the victim regained her composure, and were then re-admitted for the balance of the trial. Perhaps it would have been the wiser course to have continued the trial for a longer period of time since excluding the public is an extreme measure. Nonetheless, the trial court must be accorded discretion to handle emergency situations as they arise during trial. The totality of circumstances here present convince us that the intendment of the public trial proscription was not violated by the exclusionary order.[2]

---

[2]For worthwhile reading on the subject of public trial see: 42 Notre Dame Law. 499 (1967); 41 N.Y.U.L.Rev. 1138 (1966); 18 Stan.L.Rev. 945 (1966).

2. Grand Jury transcript. The appellant apparently first thought of this claim of error while writing his brief on appeal. A request was not made for the transcript either before or during trial. We suppose the explanation is that when this case was tried an accused was not entitled to demand and receive such transcript. See dictum, Victoria v. Young, 80 Nev. 279, 392 P.2d 509 (1964). Since the trial of this case the dictum of Victoria, supra, has been expressly overruled (Shelby v. District Court, 82 Nev. 204, 414 P.2d 942 (1966) and, upon appropriate request, an accused may now receive a copy of the grand jury transcript. Ivey v. State, 82 Nev. 427, 420 P.2d 853 (1966). We are asked to apply the new doctrine retroactively. There is no good reason to do so. The Shelby and Ivey cases are bottomed upon the principle that an accused has the right to test probable cause to hold him for trial. The reason for the principle vanishes after trial has occurred.

3. Court and prosecutor misconduct. The appellate theme is that the judge and prosecutor each exhibited a racial bias which precluded a fair trial. We have searched the record with care to ascertain whether the charge has substance. We find none. To the contrary, the record shows that the judge supervised a difficult case in commendable fashion. The charge of "misconduct" rests upon the following occurrences: a ruling that counsel must have a proposed exhibit marked for identification before interrogating the witness about it; a statement to defense counsel that his question was argumentative; an admonition that defense counsel should ask proper questions and refrain from commenting upon the witnesses' response; and, finally, an admonition to defense counsel when he asked the victim a question containing an assumption that she had engaged in sexual intercourse with other Negroes, when there was no evidence in the record to support the assumed fact. It is apparent that in each instance the court acted correctly.

The charge that the prosecutor was guilty of improper statements during summation has some merit. None of the statements, however, is sufficiently serious to suggest that the jury was influenced or the defendant's rights affected. On every occasion when objection was made, the judge sustained defense counsel and instructed the jury to disregard the prosecutor's remark. No useful purpose is served by repeating the statements. Only one of them referred to the defendant's race and

cannot be deemed prejudicial in the context of this case, since the victim was Caucasian and the accused, Negro. Intercourse was admitted by each—the former asserting that it was against her will, and rape—the latter testifying that he paid $50 for her consent to the sex act. In any event, as we read this record the subject of race was more in the thoughts of defense counsel than in the mind of any other participant. He opened and closed his summation by dwelling upon that subject.

Affirmed.

COLLINS and ZENOFF, JJ., concur.