Eddie Dean PRICE, Appellant,

v.

The STATE of Texas, Appellee.

No. 45817.

Court of Criminal Appeals of Texas.

March 7, 1973.

Rehearing Denied July 3, 1973.

Kent Wagonseller and Jim R. Wright, Lubbock, for appellant.

Blair Cherry, Jr., Dist. Atty., Bob D. Odom, Asst. Dist. Atty., Lubbock, Jim D. Vollers, State's Atty., and Robert A. Huttash, Asst. State's Atty., Austin, for the State.

## OPINION

GREEN, Commissioner.

Appellant was convicted by a jury of rape. No jury being requested for the penalty stage, the court fixed the punishment at life.

The sufficiency of the evidence is not challenged. Suffice it is to say that prosecutrix testified of a most brutal attack on her by appellant in her office about 7:00 P.M. on April 30, 1970, while she was working late. While appellant was choking her with a piece of black electrical cord, striking and threatening to kill her if she continued to resist, she passed out, and the first thing she remembered after that was being in the hospital and receiving medical care. As a result of the attack, prosecutrix was confined in a hospital for five days.

A written statement, in which appellant admitted having intercourse with prosecutrix on the occasion in question and striking her three or four times (after the act of intercourse) was admitted in evidence. Other evidence pertinent to appellant's grounds of error will be discussed in connection with the individual grounds.

Appellant's fourth ground of error is that "defendant's confession was inadmissible since there was no knowing, intelligent and voluntary waiver of his 'rights.' "

Appellant was arrested within an hour after the rape is alleged to have occurred. He was taken to the police station and questioned by officers. After about 45 minutes of conversation, the appellant made a written confession.

■ Appellant does not dispute that he was properly warned of his rights in the taking of his confession, as required by Art. 38.22, Vernon's Ann.C.C.P. His contention under this ground of error is that because of his alleged mental deficiency, he did not knowingly and intelligently waive those rights.

"Of course, if the mental subnormality is so great that an accused is incapable of understanding the meaning and effect of his confession, then it would not be admissible. Grayson v. State, 40 Tex.Cr.R. 573, 51 S.W. 246." Casias v. State, 452 S.W.2d 483 (Tex.Cr.App.).

A hearing on appellant's motion to suppress the statement was had prior to the trial. Public school records were introduced which showed, according to school officials, that appellant, who reached the seventh grade, was below approximately 94 to 87 percent of his peers as measured by accepted intelligence reports. Draft board officials and an army recruiting sergeant testified, as defense witnesses, to appellant's subnormal mental deficiency. Dr. Richard Lee Wall, who qualified as a clinical psychologist, testified as a defense witness that he had examined appellant and found his IQ to be 68, and that an IQ of below 69 indicates that a person is mentally defective, appellant being at the top of that group, with the mentality of a 10 or 11 year old person. Dr. Wall doubted whether appellant could have understood the warnings given by the police officials as they appeared in the complicated sentence structure. His opinion was that appellant understood only as a 10 or 11 year old child would understand, but he declined to state definitely that appellant did not understand the warning given. He stated that appellant knew the difference between right and wrong as a child of 10–11 years would know, and that he was able to communicate with his counsel.

The confession contains the required warnings, and when he signed it appellant swore that he understood those rights and that he was voluntarily waiving them. Officer Hargrave testified that after he had taken the statement from appellant, he pointed out six typing errors to appellant, and asked appellant to initial the mistakes, and that appellant did initial them in his presence. Three officers who witnessed the statement testified that appellant was

repeatedly advised of his rights, and repeatedly acknowledged that he understood them.

The court found the confession of the appellant to have been voluntarily made after all proper warnings had been made and waivers obtained. He further found that the appellant knowingly, intelligently and voluntarily waived his rights, and that the confession was freely and voluntarily made.

The evidence given in the hearings before the court was reiterated in the trial before the jury. The jury was properly charged on the issue of voluntariness of the confession, and was also told not to consider same unless they found that appellant was possessed of sufficient mentality to know what he was doing and the nature and effect of his act in making his statement.

In Casias v. State, supra, a contention before this court was that the trial court erred in failing to instruct the jury to disregard the confession if the jury found or had a reasonable doubt that appellant did not have the mental capacity to understand the contents thereof and the warnings allegedly given. (The trial court in the instant case did give such instructions) A psychologist testified that Casias was illiterate, had a limited vocabulary, had an IQ of 68, was retarded, was not able to read, had a mental age of 8 to 10 years, and an education of approximately second grade. This Court, in overruling appellant's ground of error, speaking through Judge (now Presiding Judge) Onion, said in part:

"It has been said that there is a general agreement among courts that a confession of crime is not inadmissible merely because the accused, who was not insane, was of less than normal intelligence, Vasquez v. State, 163 Tex.Cr.R. 16, 288 S.W.2d 100, and mere illiteracy has not been considered as a form of mental subnormality. Berry v. State, 58 Tex.Cr.R. 291, 125 S.W. 580. In Vasquez, the con-

fession was held to be admissible where the accused was shown to have been a 'mentally deficient person between a moron and an imbecile' who had a 'mental age of 4 years and 7 months' . . ."

"While the trial court might have been well advised to have responded to appellant's objection to the charge, we cannot conclude, in light of the evidence offered, the charge on voluntariness and counsel's jury argument on intelligence and mental ability as a factor to be considered in determining voluntariness, that the court's failure to charge as desired was calculated to injure appellant's rights or deprive him of a fair and impartial trial. See Article 38.19, V.A.C.C. P."

Appellant's fourth ground of error is overruled.

In his fifth ground, appellant states that the trial court violated his rights of due process in not sua sponte ordering a hearing on appellant's mental capacity to stand trial when that issue was raised by the evidence. Again, appellant relies largely on the evidence of Dr. Wall. He cites as his authority Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815, and Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824.

These cases are authority for the proposition that where the evidence raises a doubt about the competency of the accused to stand trial, the court should on its own motion conduct a separate hearing on his competency.

In Vardas v. State, 488 S.W.2d 467 (Tex.Cr.App.), we held that the trial court erred in not conducting on his own initiative, during the trial on the merits, a hearing on the issue of the present insanity of the defendant. However, in Vardas, the issue of present insanity was clearly raised by the evidence. The trial court so found and the issue was submitted to the jury along with the issue of guilt. See also Townsend v. State, 427 S.W.2d 55 (Tex.

Cr.App.), where the court found that a bona fide doubt as to the defendant's competency to stand trial was raised by the evidence.

In the instant case the evidence raised no issue of present incompetency to stand trial. No instruction on present insanity was asked for, or given. Dr. Wall testified that appellant was mentally deficient and below normal, but he also stated on several occasions that appellant was able to assist his counsel and could communicate with them, that he understood about punishment, that he could understand the nature of the proceedings, and knew the difference between right and wrong. Appellant testified in the preliminary hearing on the motion to suppress the confession, and was well able to respond to the questions of his counsel and of the prosecuting attorney. After the hearing on the voluntariness of the confession, the court not only found the appellant competent to make the confession, but also made a finding that he was competent to stand trial.

■ Appellant was not deprived of due process of law or fundamental fairness by the failure of the trial court, under the evidence, to call for a separate hearing on the issue of present insanity. Boss v. State, 489 S.W.2d 580 (Tex.Cr.App.1972).

■ Appellant next complains, in ground of error number six, about the admission in evidence through the witness Carley, a police officer, of the "conclusionary" statement of the prosecutrix: "I've been raped at the office." There was no objection to admission of this evidence, and there is consequently nothing to review. Witt v. State, 475 S.W.2d 259 (Tex.Cr.App.); Parsley v. State, 453 S. W.2d 475 (Tex.Cr.App.); Garcia v. State, 428 S.W.2d 334 (Tex.Cr.App.).

However, we do note that this outcry of the prosecutrix was made very shortly after the crime, while she was being taken by a *doctor* to a hospital, after she had blacked out and while she was suffering from the beating she had received and bleeding profusely. Even over objection, the statement under the circumstances would have been admissible as part of the res gestae or as "the bare fact of the complaint." Knox v. State, 487 S.W.2d 322, 327 (Tex.Cr.App.).

■ In his first and second grounds of error, appellant complains of the admission in evidence, over objections, of a laboratory report concerning a test for the presence of male semen within the private parts of prosecutrix. The specimen of semen was taken by a doctor, deceased at the time of the trial, shortly after prosecutrix was admitted to the hospital following the alleged rape. Appellant contends a proper predicate for the admission of the laboratory specimen was not established so as to render it admissible under Article 3737e, Vernon's Ann.Tex.Civ.St., and that there was no showing of a proper chain of custody of the laboratory specimen.

In view of the record in the case, we need not pass upon these two grounds of error, as error, if any, which we do not decide, in the admission of the report was rendered harmless when we consider the record as a whole. The sole purpose of the introduction of the laboratory report was to show that on this occasion, prosecutrix did have sexual intercourse with some male, and that there was penetration of her private parts.

Prosecutrix detailed the events she remembered happening before she passed out as a result of the beating and choking she said she received at the hands of appellant. She testified that she was a doctor's secretary and was working in her office about 7:00 P.M. when she heard a noise in the corridor leading to her room. She got up to investigate and saw appellant, a janitor in the building. He immediately grabbed her by her arms, and when she asked him what he wanted, he answered, "I want you." She offered him money to let her go, but he repeated, "No, I want you." He then struck her and started choking her

with a piece of thick, black electrical cord, causing her to become unconscious. She did not remember the actual act of intercourse.

Appellant in his confession heretofore discussed admitted coming to prosecutrix' office, and stated that after he grabbed her on this occasion, "She asked me what I wanted and I told her you know what I want. I then had intercourse with her. After I finished having sex with her I got down off the table. . . ."

Thus, the admissions of the appellant were sufficient to prove penetration, and the introduction of the laboratory report in evidence could not have been harmful to appellant. His grounds of error numbers one and two are overruled.

By his third ground, appellant asserts error of the trial court in excluding the public from the courtroom during the testimony of the prosecutrix.

As the prosecutrix was called to the stand, there was a conference at the bench after which, the jury not being present, the court directed that the courtroom be cleared temporarily "in the interest of the proceedings of this case, and because the circumstances that will present themselves shortly, it is necessary that this order be made." Appellant objected "for the reason that the Constitution of the United States provides that a person accused of a crime is entitled to a speedy and public trial . . ." The court before overruling the objection explained the reason for his ruling as being that the witness "is in mental straights, mentally overwrought . . ." In addition to appellant, those permitted to remain were a representative of the press, a law student assisting defense counsel, and of course the judge, jury, court reporter, bailiff, and the attorneys for the State and defense. As soon as the prosecutrix was excused from the witness stand, the courtroom was again opened for the public.

Our Texas Constitution, Article 1, Section 10, Vernon's Ann.St., provides in part

that "In all criminal prosecutions, the accused shall have a speedy public trial, by an impartial jury. . . ." Practically the same language is contained in Amendment VI of the United States Constitution.

In Grimmett v. State, 22 Tex.App. 36, 2 S.W. 631 (1886), a rape case, the audience had interrupted the cross-examination of a 14 year old female witness (not the victim of the alleged rape). The trial judge thereupon ordered the courtroom cleared and kept the public out during the remainder of the cross-examination. The Court of Appeals, speaking through Judge Willson, held that this was not in violation of defendant's right of a public trial, saying:

"In our opinion, the order and action of the court, as shown by the bill of exception, were not in violation of the defendant's right to a public trial. It was very proper, we think, under the circumstances, to exclude from the court-room the principal portion of the audience, not only because of the vulgar and indecent nature of the evidence being developed but because the audience was disorderly, and it was impossible to discover the particular individuals creating the disturbance, and therefore impossible to conduct the trial in an orderly manner, without excluding from the court that portion of the audience in which disorderly conduct was occurring. It was also proper to pursue this course in order to relieve the witness of the embarrassment which the crowd of persons, and the disorderly conduct of such crowd, occasioned. A reasonable portion of the audience, consisting of attorneys and officers of the court, was permitted to remain in the court-room, and the doors of the court-room were kept closed temporarily only, during the cross-examination of one witness. It is not shown that any person who could have been of any service to the defendant in his trial was excluded, or that any injury whatever was done him by the order and act complained of by defendant. While it is of the highest importance that every

right guarantied (sic) an accused person by the constitution or the law should be carefully and liberally awarded him, we must not do violence to reason and justice in construing these rights. We are clearly of the opinion that the defendant was accorded the right of a public trial, and that there was no error in the order and action of the trial court excluding a portion of the audience temporarily from the court-room."

We quote from 48 A.L.R.2d 1450 as follows:

"A trial judge may in his discretion exclude spectators from the courtroom while the testimony of a witness in a criminal case is being taken, if such exclusion appears reasonably necessary to prevent the embarrassment or emotional disturbance of such witness or to enable the witness to testify to facts material to the case, and this is particularly true if the witness is of immature years."

Quoting from People v. Jelke, 308 N.Y. 56, 123 N.E.2d 769, 772:

"The public trial concept has, however, never been used as imposing a rigid inflexible straitjacket on the courts. It has uniformly been held to be subject to the inherent power of the court to preserve order and decorum in the courtroom, to protect the rights of parties and witnesses, and generally to further the administration of justice.   .   .   .

"It is also recognized that the court may temporarily exclude spectators, where necessary to enable an immature or emotionally disturbed witness to testify."

The United States Court of Appeals, Eighth Circuit, in passing on a habeas corpus proceeding in a case of rape where the death penalty was assessed, in Harris v. Stephens, 361 F.2d 888, 891, said:

"The argument concerning the closing of the courtroom to spectators during the testimony of the victim is equally spurious. This is a frequent and accepted practice when the lurid details of such a crime must be related by a young lady. See United States v. Geise, 262 F.2d 151 (9th Cir. 1958), cert. denied, 361 U.S. 842, 80 S.Ct. 94, 4 L.Ed.2d 80 (1959); Hogan v. State, 191 Ark. 437, 86 S.W.2d 931 (1935)."

■ Although the prosecutrix was not of tender years [1] but was a young adult woman, it was within the sound discretion of the trial judge, subject to review on appeal for possible abuse, to decide on the exigencies of the occasion. He, by reason of his presence and opportunities for determining the best interests of all concerned, including the rights of the accused, decided that in the interest of justice he should clear the courtroom of spectators. We are unable to find any harm to appellant as a result of the court's action. We find no violation of appellant's constitutional rights and no abuse of discretion, and overrule appellant's ground of error.

No motion for rehearing will be entertained or filed by the clerk without leave of the court being first obtained after good cause shown.

The judgment is affirmed.

Opinion Approved by the Court.

[1]. For additional authorities on the subject, see 28 Tex.Law Review 265; Kugadt v. State, 38 Tex.Cr.R. 681, 44 S.W. 989; Geise v. United States, 9 Cir., 262 F.2d 151; Reagan v. United States, 9 Cir., 202 F. 488; Callahan v. United States, 9 Cir., 240 F. 683; Riley v. State, 83 Nev. 282, 429 P.2d 59; State v. Poindexter, 231 La. 630, 92 So.2d 390; Kirstowsky v. Superior Court, 143 Cal.App. 2d 745, 300 P.2d 163.