The **UNITED STATES** of America,
Plaintiff-Appellee,

v.

**Walter A. MACK, Defendant-Appellant.**

**No. 11854.**

United States Court of Appeals
Seventh Circuit.

Oct. 10, 1957.

Rehearing Denied Dec. 23, 1957.

Albert E. Jenner, Jr., Prentice H. Marshall, Chicago, Ill., for appellant.

Robert Tieken, U. S. Atty., Edward J. Calihan, Jr., Asst. U. S. Atty., Chicago, Ill., John Peter Lulinski, Asst. U. S. Atty., Chicago, Ill., for appellee.

Before LINDLEY, HASTINGS and PARKINSON, Circuit Judges.

HASTINGS, Circuit Judge.

This appeal is from a judgment entered upon the verdict of a jury finding appellant guilty of violation of the Internal Revenue Code of 1939, 28 U.S.C.A. § 145(b).

Appellant, Walter A. Mack, was first charged in a two-count indictment. In the first count he was charged with wilful attempt to defeat and evade a large part of the federal income taxes due and owing by W. A. Mack, Inc., a corporation, for the year 1947, by filing in his capacity as president of the corporation, a false and fraudulent income tax return showing taxes due of $70,529.16, whereas it was alleged he knew the net income of the corporation for that year was such that the tax owing to the United States was $94,067.58. The second count charged him with a wilful attempt to defeat and evade a large portion of his personal income taxes for the year 1947. Subsequently, a second two-count indictment was returned against him covering the year 1948. Its charges were identical to the first indictment save for the year and the amounts involved. Following a lengthy trial in which about ninety witnesses were called and approximately thirteen hundred exhibits were introduced in evidence, appellant was convicted under the first count of the first indictment involving the corporate taxes for the year 1947 above referred to. The jury disagreed on the remaining three counts. Appellant charges the trial court erred in making improper inquiry of the jury during its deliberation, in rulings upon evidence and in prejudicial joinder of the corporate and personal counts for trial.

W. A. Mack, Inc., was engaged in the business of selling new and used automobiles. This appeal involves unreported corporate income of $48,699.59 and fictitious commission deductions of $13,585.00. The unreported income consisted generally of sales of automobiles not recorded in the corporate books and sales where amounts actually received were in excess of amounts recorded. The disallowed deductions were commissions paid to fictitious payees. Appellant admits the evidence is sufficient to sustain the conviction and does not question that in this appeal.

We are called upon to determine four contested issues in each of which appellant vigorously contends the trial court committed reversible error. The record is voluminous and each of these issues necessarily requires a consideration of the pertinent facts. We shall treat them in some detail.

Appellant contends that the trial court made improper inquiry of the jury during its deliberation. The jury retired to deliberate upon its verdict at 4:00 o'clock in the afternoon. At 1:10 the following morning, after continuous deliberation the jury was recalled to the courtroom where the following exchange between the court and the jury took place:

"The Court: Without telling the Court how you stand, the Court would like an indication whether there is a prospect of your agreeing on a verdict. How are you progressing?

"Foreman Of The Jury: I suppose I speak for the jury. We are progressing, but we are not near any final result. I will put it that way.

"The Court: Have you taken ballots?

"Foreman Of The Jury: We have taken a number of ballots. I would say we have perhaps taken six or eight, approximately.

"The Court: How many of you believe that you will agree on a verdict or will be able to?

"Foreman Of The Jury: I don't know, I couldn't answer for anybody but myself. (Raising of hands by jurors.)

"A Juror: We will agree one way or the other.

"A Juror: Judge, do you think we are taking too much time with this?

"The Court: No, I don't want to hurry you. It is a little after one o'clock. Suppose you go back for another hour and try it.

"Foreman Of The Jury: At the end of the hour, Judge?

"The Court: I don't know. I will make no commitment at this time.

"A Juror: We are sorry to keep you up so late, Judge.

"Foreman Of The Jury: We want to do a good job and give everybody a chance to be heard.

"The Court: All right. Go back and see if you cannot agree on a unanimous verdict."

The jury retired to the jury room whereupon the following colloquy between the court and counsel was had:

"Mr. Calihan: I would like to make a statement in the record. I don't think there was any indication but that all twelve jurors raised their hands. They indicated that they thought a verdict would be possible. I think all of them had their hands raised. So, at least, there is some encouraging sign.

"The Court: I thought around seven or eight.

"Mr. Levinson: There was one definitely did not.

"Mr. Calihan: I looked at them. I thought they all did.

"The Court: Some of them raised their hand lightly and put it right down.

"Mr. Crowley: I think they believe they can reach a unanimous agreement if each agrees with the other.

"The Court: I think we will give them at least another hour and see how they progress."

The jury returned its verdict in open court at 3:10 the same morning.

Appellant's contention that reversible error was committed by the trial court in its inquiry of the jury during its deliberations turns upon a consideration of the language of the court set forth above from the record. It has been definitely and clearly established that an inquiry as to the division of a jury on the question of the guilt or innocence of the defendant is in itself ground for reversal. Brasfield v. United States, 1926, 272 U.S. 448, 47 S.Ct. 135, 71 L.Ed. 345. In the Brasfield case, the jury having failed to agree after some hours of deliberation, the trial judge inquired how it was divided numerically and was informed by the foreman that it stood nine to three without his indicating which number favored a conviction. In reversing the conviction, the court said: "that the *inquiry itself* (our emphasis) should be regarded as ground for reversal" and that "in general its tendency is coercive." In Burton v. United States, 1905, 196 U.S. 283, 307, 25 S.Ct. 243, 49 L.Ed. 482, the court condemned the practice of inquiring as to the extent of its numerical division. In United States v. Dunkel & Co., 2 Cir., 1949, 173 F.2d 506, 507, the inquiry was as to whether or not there is "a majority, a pronounced majority in agreement", with a response from the foreman that "There is a majority, very much." At that point the trial court charged the jury in the often repeated language found in Allen v. United States, 1896, 164 U.S. 492, 501, 17 S.Ct. 154, 41 L.Ed. 528, upon the duty of the jurors to agree. The court held the inquiry to be improper, and in reviewing the Brasfield case found "The language of the Court is so clear and sweeping that further question seems now impossible." We shall not attempt here to repeat the review of the cases so well considered in the Dunkel case. However, the pattern of the inquiry in all of them is as to the

numerical division of the jury on the question of guilt or innocence of the defendant without stating how they stood in that regard.

■ In the instant case, we have an inquiry of a distinctly different character. The inquiry was directed solely to the question of the prospect of the jury agreeing upon a verdict. At no time did the trial court inquire as to a division on the question of the guilt or innocence of the defendant and the jurors offered no response on that subject. In our opinion the rule laid down in the Brasfield case does not apply here. To hold otherwise would be to make it almost utterly impossible for a trial court to make inquiry of the jury as to the progress of their deliberations. It would impede the reasonable and orderly conduct of a trial. Here the inquiry was: "Without telling the court how you stand, the court would like an indication whether there is a prospect of your agreeing upon a verdict. How are you progressing?" and, "How many of you believe that you will agree on a verdict or will be able to." This inquiry was one within the bounds of propriety and was not an inquiry as to a division. We find no cases holding that an inquiry as to the prospect of the jury agreeing upon a verdict was improper, prejudicial or coercive. We find no error in this inquiry.

■ Appellant next contends that the trial court improperly excluded from evidence the affidavit of the witness Bahlenhorst attached to his deposition as an exhibit. Bahlenhorst was sales manager of W. A. Mack, Inc. and had handled a number of the car sales in question and had received the commissions made payable to fictitious payees. He was known to be in ill health and on January 15, 1954, signed an affidavit stating the nature of his employment; the basis of his compensation during the years 1946, 1947, and 1948; his instructions to the bookkeeper during those years to draw commission checks payable to persons other than himself, these being his monthly commission; his receipt of these commission checks and his cashing them;

that the proceeds of these commission checks were never paid to appellant or to the corporation; and that during those years he never turned over any currency to appellant representing over-invoice payments from used car dealers or from customers arising out of sales made by affiant. On February 23, 1954, appellant moved to take the deposition of Bahlenhorst on the ground that he was a material witness and was incurably ill with cancer and not expected to live to testify at the trial. The deposition was taken at his home on February 27, 1954, and he died on March 2, 1954. He was examined at length by counsel for both sides. He identified the affidavit of January 15, 1954, saying that he signed it, that it was executed voluntarily and that the facts recited were true and accurate. The affidavit was attached to the deposition as Exhibit No. 1. The deposition was read in evidence and appellant then offered the Exhibit No. 1 in evidence. The court excluded the affidavit on objection by appellee on the ground that such a signed statement was competent only for impeachment purposes.

Appellant urges the importance of the affidavit as being the only evidence corroborating appellant in his defense that he knew nothing of the various transactions recited therein. However, appellant had ample opportunity to pursue this line of inquiry at the taking of the Bahlenhorst deposition. We cannot speculate as to whether counsel was precluded from asking these questions because of the physical condition of the witness. The inquiry did not seem to be limited otherwise. The affidavit sought to be admitted was an *ex parte* affidavit. It was incompetent and the court properly excluded it for the purposes offered. Vendetti v. United States, 9 Cir., 1930, 45 F.2d 543. It was not offered for impeachment purposes.

■ Appellant further contends that the trial court improperly admitted appellee's Exhibit 1228, the worksheet of Agents Guest, Clegg, and Bliss. over appellant's objection. This exhibit was in-

troduced by appellee as secondary evidence of the records of Merrion Motor Sales, which records were not in existence at the time of trial. Exhibit 1228 is a 14-column accountant's worksheet prepared by three revenue agents. It purports to trace the sale of fourteen used automobiles by W. A. Mack, Inc., to Merrion Motor Sales, and from Merrion to the ultimate retail purchasers. Of the fourteen cars listed nine were allegedly sold in 1947 and five in 1948. Agent Bliss testified that he was given the exhibit for use in his investigation in 1951, and that it then bore all the entries appearing in the first nine columns, *viz.*: The selling date, the stock number of the new dealer, the make, the body style, the motor number, the serial number, the year of the car, the new car dealer's cost and the new car dealer's selling price, and that these entries were made by Agent Guest.

This information is also substantiated by the original invoices shown in evidence. Bliss further testified that all entries appearing in the 10th, 13th, and 14th columns of the exhibit, being respectively a list of check numbers in those instances where a check was used by Merrion to pay W. A. Mack, Inc., a column marked "additional" showing the names of the retail purchasers of the cars and the used car dealer's selling price, and that these entries were on the exhibit and were made by Agent Clegg. There were also certain entries by Agent Clegg in column 11 and some notations in columns 11 and 12 which were erased by Agent Bliss leaving some of these entries partly legible. Agent Bliss made the entries appearing in column 11 showing the "regular payment" made for the cars, and all of the computations appearing in column 12, these entries being the difference in amount between the entries appearing in columns 9 and 11. The exhibit recited total unreported overpayments for the year 1947 in the amount of $4,186.00. Agent Bliss testified that he traced the cars listed on the worksheet through Merrion's books and records consisting of the used car register ("po-

lice book"), cancelled checks, check stubs and sales invoices, and that Merrion did not maintain any other records. Merrion testified that these records were kept in the normal course of his business, and that after the examination of his records by the agents his wife burned the records, and finally that Exhibit 1228 accurately reflected the contents of his records in respect to the purchase price paid by him for the automobiles listed. Merrion had been present at the time Agent Bliss was checking his records. After Exhibit 1228 was in evidence, appellee offered "to blank out all the information except as reflected on the payment of the cars with the motor and serial numbers" prior to handing the exhibit to the jury, to which deletions appellant objected, and the exhibit was admitted as a whole.

Appellant relies strongly on Hartzog v. United States, 4 Cir., 1954, 217 F.2d 706, in support of his contention that the document was hearsay due to the failure of all three of the agents who had a part in its original preparation to testify. The Hartzog case also involved a conviction for income tax evasion. During the course of that trial, the Government put into evidence two worksheets as a substantial part of its proof of Hartzog's income for the years in question. One set of the worksheets had been prepared by Agent Baynard who died before the case came to trial. The other set was prepared by Agent Berlin who relied heavily on information secured by Baynard. Berlin at no time examined the information and materials upon which Baynard based his figures except on one occasion when he saw Hartzog's farm ledger for about two minutes. The court on appeal correctly decided that the admission of these worksheets over objection of defendant was prejudicial error, stating (at page 708):

"Clearly, the worksheets prepared by Baynard before his death, and introduced *without his testimony*, are hearsay in so far as they tend to indicate the existence of the records and checks upon which the

worksheets are based; they are also hearsay as to the amounts and classification of these checks and other records." (Our emphasis.)

The court also rejected the contention (at page 710), that Berlin as a supervisor of the project could testify as to the validity of the documents. There was every indication that Baynard had used his own discretion and judgment in the classification of the information that he alone saw.

■ This case, on its facts, does not support appellant's contention here. Clearly, we do not have a case of an unsworn and unverified version of what an agent thought certain records contained. Agents Guest and Clegg, who preceded Bliss in working on the exhibit in question, did not alone have access to the records which the worksheet purports to reflect. Agent Bliss did not testify as to the work of others of which he had no actual knowledge. On the contrary, Bliss testified that he had transcribed from Merrion's records and books a good part of the figures and information on the exhibit, and that he had verified the work of the other two agents in regard to Merrion's records.

"It has long been recognized that when a record has been destroyed, secondary evidence of its contents may be admitted." Corbett v. United States, 9 Cir., 1956, 238 F.2d 557, 560, 561.

This exhibit is the only one of approximately thirteen hundred exhibits in evidence of which appellant now complains. Certainly a substantial portion of the information in the exhibit is substantiated by other exhibits in evidence. It is difficult to conclude that appellant has been prejudiced by the introduction of this exhibit, particularly in view of his objection to the deletion of irrelevant portions thereof. Furthermore, the trial court instructed the jury as follows:

"The summaries made by witnesses have no independent value as evidence. Such summaries are entitled to weight as evidence only to the same extent that you choose to give weight to the testimony of the witnesses or the books and records upon which the summaries are based. If you choose to disregard as evidence all or a part of the testimony of such witnesses or of the correctness of such books and records then you must likewise disregard so much of the summaries of the witnesses as are based on the testimony of such witnesses and the books and records you decide to disregard."

We conclude that the trial court did not commit reversible error in the admission in evidence of Exhibit 1228.

■ Appellant finally maintains that the trial court committed prejudicial error in denying appellant's motions to compel appellee to elect whether it would proceed upon the counts charging attempts to evade corporate taxes or the counts charging attempts to evade personal taxes for the years 1947 and 1948. Appellant's motions were timely and were made pursuant to Rule 14 of the Federal Rules of Criminal Procedure, 18 U.S.C.A. The court ruled that the trial of all four counts be joined in one action.

Rule 14 provides:

"If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires."

The rule itself is addressed to the sound discretion of the trial court. It does not appear to us that appellant was prejudiced or that he was embarrassed in his defense because all four counts were tried together. On the contrary, it would seem that these charges were of the nature that should be joined in trial. In the one instance appellant's personal taxes were involved for the years 1947 and

1948, and in the other instance the corporate taxes for the same years of a corporation of which he was the active head and for which he filed the tax returns in question. We hold that the trial court did not abuse its discretion directing the joinder of the personal and corporate counts in one trial, that the joinder was not prejudicial and that appellant was not thereby deprived of a fair trial.

Appellant insists strongly that this was a "close case" and that, therefore, any claimed error must be closely scrutinized. We shall not hazard a guess on the degree of "closeness" in this case. We do say that all of appellant's claims for reversible error have been carefully considered. The record as a whole discloses to our satisfaction that appellant was fairly tried and that no prejudice was done him in the questioned rulings of the court.

The judgment is

Affirmed.