552 F.2d 588
 UNITED STATES of America ex rel. Eddie Lee ANTHONY,
Petitioner-Appellant,
v.
Allyn R. SIELAFF, Director and Thomas R. Israel, Warden of
the Illinois State Penitentiary, Menard, Illinois,
Respondents-Appellees.
 No. 76-1822.
 United States Court of Appeals,
Seventh Circuit.
 Argued Dec. 9, 1976.
Decided April 8, 1977.
 
 James Geis, Deputy State Appellate Defender, Richard Steck, Asst. State Appellate Defender, Chicago, Ill., for petitioner-appellant.
 William J. Scott, Atty. Gen., Gerri-Papushkewych, Asst. Atty. Gen., Springfield, Ill., for respondents-appellees.
 Before PELL and BAUER, Circuit Judges, and CAMPBELL, Senior District Judge.*
 BAUER, Circuit Judge.
 
 
 1
 The issue on this appeal from the dismissal of the petitioner's habeas corpus petition is whether the state trial judge unconstitutionally coerced the jury by repeatedly polling them during deliberations in order to ascertain whether they could reach a verdict.
 
 
 2
 Inasmuch as the petitioner partially rests his argument on the nature of the jury's verdict as well as on the instructions given, it is necessary to briefly state the facts surrounding the underlying charge.
 
 
 3
 Petitioner Anthony, an inmate at the Joliet Branch of the Illinois State Penitentiary, was charged with four counts of attempted murder for attacking four prison guards with a razor after he had been ordered to shave his moustache. His sole defense was insanity.
 
 
 4
 The events relevant to this appeal occurred during the jury deliberations in Anthony's second trial, his first trial having ended in a mistrial after the jury reported itself deadlocked following ten hours of deliberation.
 
 
 5
 During the second trial, the judge communicated with the deliberating jury three times. First, after three hours of deliberation, he denied a written request from the jury for a transcript of the defense psychiatrist's testimony. Second, after about twelve hours of deliberation, the judge gave the jury a modified Allen instruction. Third, one and one-half hours after giving the Allen -type instruction, the judge called the jury into the courtroom to determine whether they could reach a verdict. This third contact is the one Anthony challenges.
 
 
 6
 The details of the judge's questioning are significant. After the jury returned to the courtroom, the judge asked each juror, "In your opinion, are you a deadlocked jury?" Eleven of the jurors answered "yes"; juror Avalon answered "no." The judge then asked Avalon, "Do you feel by further deliberations this jury can come to a verdict?" He responded "I think so," and the judge asked the same question to each of the jurors. They all responded negatively, except Avalon, who responded that the jury could return a verdict in a half-hour. The judge then asked all the jurors, "Do you believe that by deliberating another half-hour this jury can arrive at a verdict?" Eight answered "yes," two answered that they "would like to try," and two answered "no." The judge then remarked, "All right, I'm going to send you back to deliberate further upon your verdict," and the jury retired. Defendant's counsel never objected to the judge's questioning. Twenty minutes later, the jury returned guilty verdicts on two of the counts and not guilty verdicts on the other two counts.
 
 
 7
 Anthony appealed to the Illinois Appellate Court on the jury coercion theory presented here. The Appellate Court affirmed his conviction, People v. Anthony, 30 Ill.App.3d 464, 334 N.E.2d 208 (3d Dist. 1975), and the Illinois Supreme Court denied his petition for leave to appeal. People v. Anthony, 61 Ill.2d 598 (1975).
 
 
 8
 Thereafter Anthony filed his habeas petition with the district court. After both sides moved for summary judgment, the district judge treated the state's motion as a motion to dismiss and dismissed the suit. The judge found that (1) the petitioner had failed to exhaust his state remedies by neglecting to seek relief under the Illinois Post-Conviction Hearing Act, Ill.Rev.Stat. ch. 38 § 122-1; (2) the facts set forth in the petition did not support petitioner's jury coercion claim and (3) the trial judge acted within his discretion in declining to give a copy of the defense psychiatrist's testimony to the deliberating jury. The petitioner appeals only the first two findings.
 
 I.
 
 9
 This Circuit held in United States ex rel. Williams v. Brantley, 502 F.2d 1383 (7th Cir. 1974), that an Illinois habeas corpus petitioner whose claim has been rejected by the Illinois courts on direct appeal need not process a petition under the Illinois Post-Conviction Hearing Act before the district court can hear the claim. The Illinois Appellate Court denied Anthony's jury coercion claim on direct appeal, and the Illinois Supreme Court denied him leave to appeal. Thus, the district court erred in holding that Anthony was required to petition under the Illinois Post-Conviction Hearing Act before the district court could hear his claim.II.
 
 
 10
 On the merits, Anthony argues that the repeated polling of the jurors was unconstitutional because it constituted a coercive supplementary instruction, analogous to an Allen charge, that was not tempered by a statement admonishing the jurors to adhere to their conscientiously reached opinions.
 
 
 11
 The petitioner points out three things in the record that he believes demonstrate that the jury was coerced: (1) during the polling, nine jurors changed their opinions as to whether they could reach a verdict; (2) the jury reached a verdict twenty minutes after the polling, after deliberating 14 hours; and (3) the verdict the jury reached was logically inconsistent and necessarily a compromise because the defendant presented no defense other than insanity and was found guilty on two counts and not guilty on two counts for events that occurred within a time span of ten or fifteen minutes.
 
 
 12
 The state responds that jury polling such as that conducted here is a routine practice of trial judges used to determine whether a jury is deadlocked so that a mistrial must be declared, and that the polling conducted here was not coercive under the circumstances and thus was not constitutional error.
 
 
 13
 In Jenkins v. United States, 380 U.S. 445, 446, 85 S.Ct. 1059, 1060, 13 L.Ed.2d 957 (1965), the Supreme Court reversed a federal conviction on the ground that the trial judge's charge to the deliberating jury "in its context and under all the circumstances . . . had (a) coercive effect." Applying this test to our facts, we find the judge's polling to be noncoercive.[1]
 
 
 14
 Polling deliberating jurors to determine the prospect of agreement on a verdict is proper so long as no inquiry into the numerical division of the jury is made. United States v. Mack, 249 F.2d 321, 324 (7th Cir. 1957), cert. denied, 356 U.S. 920, 78 S.Ct. 704, 2 L.Ed.2d 715 (1958); United States v. See, 505 F.2d 845, 851 (9th Cir. 1974), cert. denied, 420 U.S. 992, 95 S.Ct. 1428, 43 L.Ed.2d 673; United States v. Smoot, 150 U.S.App.D.C. 130, 463 F.2d 1221 (1972). In Mack, the trial judge asked the jurors questions similar to those asked here:
 
 
 15
 "Without telling the court how you stand, the court would like an indication whether there is a prospect of your agreeing upon a verdict. How are you progressing? How many of you believe that you will agree on a verdict or will be able to? 249 F.2d at 324.
 
 
 16
 An inquiry into how many jurors believed a verdict could be reached also was held to be proper in Carlton v. United States, 395 F.2d 10 (9th Cir. 1968), cert. denied, 393 U.S. 1030, 89 S.Ct. 642, 21 L.Ed.2d 574, and the absence of such an individualized inquiry before granting a mistrial has been held to be grounds for discharging a defendant rather than retrying him, because the trial judge lacked a sufficient basis for determining whether the jury had reached an impasse. United States ex rel. Webb v. Court of Common Pleas, 516 F.2d 1034, 1043-44 (3d Cir. 1975). See ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Trial by Jury 157 (Approved Draft, 1968).
 
 
 17
 In addition to inquiries into the numerical division of a jury,[2] statements to a deliberating jury that they must reach a verdict,[3] allusions to the undesirability of a retrial,[4] and setting a time limit upon further deliberations[5] have been held to be coercive. No such comments were made here.[6]
 
 
 18
 Nor was the polling here like an Allen charge[7] and thus improper without an admonition to the jurors to retain their honest convictions. See generally United States v. Silvern, 484 F.2d 879 (7th Cir. 1973); United States v. Thomas, 146 U.S.App.D.C. 101, 449 F.2d 1177 (1971). The judge did not tell the jurors to reconsider their positions, or to consult with one another or to render a unanimous verdict.
 
 
 19
 In the context of this case, the judge's communication with the jury was no more than a polling it did not reach the level of coercion that has been held to be grounds for reversal.
 
 
 20
 The matters that the petitioner argues show coercion do not cause us to alter our conclusion. They are only circumstantial indicators which are not sufficient, in our opinion, to override our determination that, in the context and circumstances of this case, the polling, necessary to determine the need for a mistrial, was not coercive. Moreover, the defense counsel's failure to object at trial to the repeated polling
 
 
 21
 ". . . is probably evidence that interpretation of the remarks as coercive would be a strained rather than a natural interpretation." United States v. Peskin, 527 F.2d 71, 85 (7th Cir. 1975), cert. denied, 429 U.S. 818, 97 S.Ct. 63, 50 L.Ed.2d 79 (1976).
 
 
 22
 The principal case relied on by the petitioner, United States v. Bass, 490 F.2d 846 (5th Cir. 1974), is distinguishable. The judge in Bass instructed the deliberating jury:
 
 
 23
 "If you have reached a verdict as to some counts of the indictment, but not as to others, you may return a verdict as to those counts. On any count as to which you are not yet in unanimous agreement, I will ask you to return to the jury room and continue your deliberations." 490 F.2d at 854.
 
 
 24
 The Fifth Circuit held this instruction to be "fraught with the same . . . potential for coercion" as an Allen charge because it served the same purpose as an Allen charge and because it was given in an Allen situation. The statements in the instant case, on the other hand, had far less resemblance to an Allen charge, both in content and purpose: The judge made no directory comments such as those made by the Bass judge instructing the jury to reach a unanimous verdict on all counts, and the judge's statement served the purpose, not present in Bass, of polling the jury as to the possibility of reaching a verdict.
 
 
 25
 United States ex rel. Tobe v. Bensinger, 492 F.2d 232 (7th Cir. 1974), cited by the petitioner, is also distinguishable. The statements made to the jury in Tobe were made outside counsel's presence by a bailiff and thus were presumed coercive unless shown to be harmless by the prosecutor. The Court held that no proof of harmlessness was made and that such proof would have been to no avail because the bailiff told the jury that they must reach a verdict an instruction that has consistently been held to be coercive. E. g., Jenkins v. United States, supra.
 
 
 26
 AFFIRMED.
 
 
 27
 WILLIAM J. CAMPBELL, Senior District Judge, concurring in part, dissenting in part:
 
 
 28
 I agree with the majority that the district court erred in holding that petitioner was required to exhaust his Illinois Post-Conviction Act remedies before instituting the present petition.
 
 
 29
 I am unable to agree, however, with the majority's determination that the trial judge's communication with the jury amounted to no more than an uncoercive polling. My review of the record indicates facts and circumstances in which petitioner's right to an uncoerced verdict was violated.
 
 
 30
 The trial transcript showed that the jury retired to begin deliberation at 2:40 P.M., November 16, 1972. At 2:30 A.M., the trial judge called the jury from its deliberation, and charged the jury with a modified Allen instruction, as adopted in People v. Prim (1972), 53 Ill.2d 62, 289 N.E.2d 601, cert. denied, 412 U.S. 918, 93 S.Ct. 2731, 37 L.Ed.2d 144.
 
 
 31
 As the majority recognizes, the details of the communications between judge and jury are significant. At 3:15 A.M., after more than 13 hours of deliberation, the jury was again called into the courtroom. The trial judge asked each juror in turn if the jury was deadlocked. Eleven indicated deadlock; one juror (Avalon) said that it was his opinion that further deliberations would lead to a verdict. The court then polled the jury a second time, but the score remained unchanged: eleven to one.
 
 
 32
 During the second polling, the following occurred:
 
 
 33
 The Court: William Avalon, Do you believe by further deliberations this jury can come to a verdict?
 
 
 34
 Answer: Yes, sir. Can I specify a time limit, say a half-hour, if we return for a half-hour because I think we are close and we realize we are. (R. 321).
 
 
 35
 The trial judge then started a third round of questioning, asking each juror "Do you believe that by deliberating another half-hour this jury can arrive at a verdict?" Satisfied that enough had responded affirmatively, the judge sent the jurors back for more deliberation. A verdict was returned twenty minutes later.
 
 
 36
 That a defendant in a criminal proceeding enjoys the constitutional right to an uncoerced verdict from the jury is a principle which needs no elaboration. Without indulging in hazardous speculation as to the mental processes of the jurors, it is my opinion that the jury was sent back for more deliberation with the awareness that it had but one-half-hour in which to reach a verdict. This awareness was inspired by the judge's third round of polling in which he indicated the one-half-hour time reference for further deliberation. In view of the verdict returned, it is clear that during the half-hour allotted to them at least some members of the jury relinquished their opinions merely to achieve unanimity.
 
 
 37
 In light of these circumstances, I believe the judge's communications indicate a time reference for further deliberation, and as such, violated the petitioner's right to an uncoerced jury verdict. I would reverse.
 
 
 
 *
 The Hon. William J. Campbell, United States District Court for the Northern District of Illinois, is sitting by designation
 
 
 [1]
 Because we hold the polling here to be noncoercive under the Jenkins standard, we need not reach the question of whether the Jenkins standard is a constitutional one applicable in habeas corpus cases, or merely a standard for the administration of the federal courts
 
 
 [2]
 Brasfield v. United States, 272 U.S. 448, 47 S.Ct. 135, 71 L.Ed. 345 (1926)
 
 
 [3]
 Jenkins v. United States, supra
 
 
 [4]
 United States v. Taylor, 530 F.2d 49, 52 (5th Cir. 1976)
 
 
 [5]
 Id. at 51
 
 
 [6]
 We do not view the judge's questioning the jurors in this case as to whether they could reach a verdict in a half-hour as setting a time limit on deliberations. Juror Avalon, rather than the judge, suggested the half-hour period, and the judge only referred to a half-hour to determine whether the other jurors agreed with Avalon that a verdict could be reached, not to intimate that a verdict should be reached within such time
 
 
 [7]
 The Allen-type charge that may be given in this Circuit was set out in United States v. Silvern, 484 F.2d 879, 883 (7th Cir. 1973):
 "The verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agrees thereto. Your verdict must be unanimous.
 It is your duty, as jurors, to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.
 You are not partisans. You are judges judges of the facts. Your sole interest is to ascertain the truth from the evidence in the case."