UNITED STATES of America ex rel.
James PASCARELLA, Petitioner,

v.

Nicholas RADAKOVICH, Chief Probation
Officer, Will County, Illinois, and Tyrone Fahner, Attorney General of the
State of Illinois, Respondents.

No. 81 C 6243.

United States District Court,
N. D. Illinois, E. D.

Sept. 28, 1982.

Sam Adam, Chicago, Ill., for petitioner.

Tyrone Fahner, Atty. Gen. of Ill., Chicago, Ill., Ronald P. Stake, Sp. Asst. Atty.
Gen., Mundelein, Ill., for respondents.

OPINION

BUA, District Judge.

■ Petitioner, James Pascarella, was convicted in the Circuit Court of Will County, Illinois of conspiracy to commit theft in violation of Ill.Rev.Stat. Ch. 38, §§ 8–2(a) and 16–1 (1977). He was sentenced to two years probation, with the first 90 days to be served under a work release program. The Illinois Appellate Court for the Third District affirmed the conviction and leave to appeal to the Illinois Supreme Court was denied. Pascarella filed a petition for writ of habeas corpus and a motion for summary judgment with this court, claiming various errors occurred in the state court proceedings.[1] Respondents have filed a motion to dismiss.

---

1. The state admits that the petitioner has exhausted his state remedies as required by 28 U.S.C. § 2254(b) (1977). *See* Respondent's Motion To Dismiss, p. 3. This court agrees. An Illinois habeas corpus petitioner whose claim has been rejected by Illinois courts on direct appeal has exhausted state remedies and may bring a writ of habeas corpus to the district court. *United States ex rel. Anthony v. Sielaff,* 552 F.2d 588 (7th Cir. 1977). Since the

As a preliminary matter, this court notes that Pascarella "accepts the facts as stated in the opinion of the Illinois Appellate Court, affirming his conviction." [2] Petitioner's Motion For Summary Judgment, p. 2. These facts reveal that the petitioner entered into agreements in Illinois with William Cowles, a police-informant, and Marty Nowak, a police officer, to violate Illinois law prohibiting the theft of motor vehicles. The facts also reveal that after these agreements were made, petitioner moved to Colorado from where he telephoned persons in Illinois regarding these agreements. The telephone conversations concerned the intended delivery of stolen cars in Will County, Illinois by John Conley, petitioner's coconspirator. Ultimately, stolen cars were delivered to undercover police officers in Will County, Illinois and petitioner's "commission" on each stolen vehicle delivered in Will County, Illinois was sent to him in Colorado.

■ From his conviction on these agreed facts, petitioner raises two claims. First, petitioner asserts that since he was in Colorado when the conspiracy occurred, the Illinois courts did not possess the jurisdiction and venue required by Art. III, Cl. 1 and Cl. 3, Article VI, Cl. 2 and the Sixth and Fourteenth Amendments to the United States Constitution. Simply stated, petitioner contends that the federal constitution prohibits a state from asserting jurisdiction over an individual for violation of a state law criminalizing conspiracy to steal motor vehicles when that individual is absent from the state during the commission of the crime.[3]

Petitioner's claim must be rejected. It has long been established that a state may constitutionally attach criminal consequences to an act occurring outside the state that has an effect within the state. In *Strassheim v. Daily*, 221 U.S. 280, 31 S.Ct. 558, 55 L.Ed. 735 (1911), the Supreme Court addressed the issue of whether a criminal defendant could be punished by the state of Michigan for fraud although the defendant personally committed no acts within the state until after the crime was complete. Justice Holmes answered the question in the context of an extradition issue also raised in the case.

· "[T]he usage of the civilized world would warrant Michigan in punishing him, although he never had set foot in the state until after the fraud was complete. Acts done outside a jurisdiction, but intended to produce and producing detrimental effects within it, justify a state in punishing the cause of the harm as if he had been present at the effect, if the state

---

Illinois Appellate Court rejected Pascarella's claims and the Illinois Supreme Court denied leave to appeal, his claims are properly before this court. Although Illinois provides for a post-conviction hearing to raise federal claims, (Ill.Rev.Stat. Ch. 38, § 122–1) the effectiveness of this remedy is limited. Under Illinois law, all claims which the petitioner could have raised on direct appeal are deemed waived. Because of this waiver limitation, a habeas corpus petition by an Illinois prisoner "should be dismissed for failure to exhaust this state remedy only if there is direct precedent indicating that under the particular circumstances of a prisoner's case the waiver doctrine will be relaxed." *United States ex rel. Williams v. Brantley*, 502 F.2d 1383, 1386 (7th Cir. 1974). Illinois precedent indicates that the waiver doctrine will not be relaxed under the circumstances of the present case. *See Illinois v. Spicuzza*, 44 Ill.App.3d 420, 3 Ill.Dec. 148, 358 N.E.2d 315 (1976).

**2.** Petitioner's brief to the Illinois Appellate Court, which is part of the record on appeal, here states:

"Did the State prove the *agreement* occurred in Will County, Illinois? (emphasis in original).

There can be no reasonable doubt that the State's evidence showed that the defendant-appellant, James Pascarella, entered into an agreement with William Cowles to violate the Illinois law prohibiting the theft of motor vehicles.

There can be no reasonable doubt that the State's evidence showed the same agreement by defendant-appellant with Marty Nowak."

**3.** It should be noted that petitioner's claim regarding venue is merely a reiteration of his jurisdictional claim. Venue refers to the place of trial within a jurisdiction. Stolen cars were delivered in Will County, Illinois. Petitioner does not suggest that he should have been tried in any Illinois county other than Will County.

should succeed in getting him within its power. [citations omitted]."

*Id.* at 284–85, 31 S.Ct. at 560. *See also United States v. Columba-Colella,* 604 F.2d 356, 358 (5th Cir. 1979).

The "usage of the civilized world" to which Justice Holmes referred in *Strassheim* is the basic concept of territorial jurisdiction possessed by every sovereign state. Courts and commentators have recognized that a sovereign state, under the territorial theory of jurisdiction, may attach criminal penalties to an act occurring within its borders or an extra-territorial act that has an effect within the state. *E.g., United States v. Columba-Colella,* 604 F.2d at 358; *see generally* George, *Extraterritorial Application of Penal Legislation,* 64 Mich.L.Rev. 609 (1966).

Extra-territorial jurisdiction may be invoked by states in a variety of situations. The classic example is the case where a shot is fired at a person across the state line, killing a person in the adjoining state. In such a situation, the presence of the offender in the state where the death occurs is not necessary to subject the offender to criminal penalties in that state. *See* 21 Am. Jur.2d *Criminal Law* §§ 343–48 (1981) (collecting cases). Likewise, if a wound is inflicted in one state but the victim later dies in another state, the courts of the state where the death occurs may try the offender for murder or manslaughter. *E.g., State v. Justus,* 65 N.M. 195, 334 P.2d 1104 (1959). Similarly, crimes like fraud, embezzlement and conspiracy are often punishable under state law even if the offender is never physically present within the state. *See* Model Penal Code § 1.02(1)(a); *See also,* George, *Extraterritorial Application of Penal Legislation, supra.* The federal courts, too, have often applied the theory of territorial jurisdiction to criminalize acts outside the United States. For example, persons who conspire to violate federal drug laws may be tried by federal courts even though such persons act wholly outside the territorial boundaries of the United States. In numerous cases, federal courts have found that they could properly try a drug conspirator who was never physically present in the United States, as long as the conspiracy was carried out partly within this country. *E.g., United States v. Lawson,* 507 F.2d 433 (7th Cir. 1974), *cert. denied,* 420 U.S. 1004, 95 S.Ct. 1446, 43 L.Ed.2d 762 (1975).

This court similarly finds that the Illinois criminal jurisdiction statute,[4] under which the Illinois courts asserted jurisdiction over the offense[5] in this case, does not violate defendant's federal constitutional rights.

In addition to his constitutional claims, the petitioner also contends that he is innocent of the conspiracy charges against him because the state's evidence consisted of proof of agreements between petitioner and police-informant Cowles and Police Officer Nowak. Petitioner contends that agreements between a citizen and police officer or police-informant do not constitute a conspiracy.

---

**4.** Ill.Rev.Stat. Ch. 38, § 1–5 provides that:
"(a) A person is subject to prosecution in this State for an offense which he commits, while either within or outside the State, by his own conduct or that of another for which he is legally accountable, if: . . .
(3) The conduct outside the State constitutes a conspiracy to commit an offense within the State, and an act in furtherance of the conspiracy occurs in the state."

**5.** The petitioner's brief in the instant case does not indicate whether the alleged unconstitutional "jurisdiction" by the Illinois courts was the assertion of subject matter jurisdiction over the offense or personal jurisdiction over the defendant. However, this court notes that cases applying the territorial theory of jurisdiction assume that the court seeking to try the accused has physical power over the individual. Thus, the jurisdiction referred to is subject matter jurisdiction, i.e. the power of the court to try such offenses. In criminal cases, the court's physical power over the accused has been implicitly deemed sufficient to provide the court with proper personal jurisdiction over the defendant. Whether the means by which the prosecuting state obtained physical power over the defendant violates a federal right is a different issue, one not raised by the facts of this case. *See United States v. Cotten,* 471 F.2d 744 (9th Cir. 1973).

Whether conversations between a citizen and a police-informant and police officer constitute a conspiracy is a matter of state law and raises no constitutional or federal issue properly reviewable here.[6] In a federal habeas corpus proceeding, state law claims can be examined only insofar as state law deprives a person of a federal right. *E.g., Wills v. Egeler,* 532 F.2d 1058 (6th Cir. 1976). Moreover, it appears that petitioner's claim is an attempt to establish that any conspiratorial acts he committed occurred outside the territorial boundaries of Illinois, thus bolstering his claim that Illinois courts could not properly try him for conspiracy. As previously noted, Illinois' assertion of jurisdiction over petitioner's crime was entirely proper.

The writ of habeas corpus is therefore dismissed and petitioner's motion for summary judgment is denied.

IT IS SO ORDERED.

---

6. Petitioner cites *Sears v. United States,* 343 F.2d 139 (5th Cir. 1965) as support for his contention that agreements with a police-informant or police officer do not constitute a conspiracy. *Sears,* however, dealt with an appeal of a conviction for conspiracy to violate federal law—the Internal Revenue Code provisions relating to the possession of an unregistered distillery.