Joseph DeGRANDIS, Petitioner-Appellant,

v.

Edward M. FAY, as Warden of Greenhaven Prison, Respondent-Appellee.

Frank DeFORTE and Ernest Zundel, Petitioners-Appellants,

v.

Wilfred L. DENNO, as Warden of Sing Sing Prison, Respondent-Appellee.

No. 492, Docket 28766.

United States Court of Appeals
Second Circuit.

Argued June 4, 1964.

Decided July 2, 1964.

Abraham W. Sereysky, New York City (Jacques M. Schiffer, New York City, of counsel), for petitioners-appellants.

Henry P. DeVine, Asst. Dist. Atty., Nassau County, N. Y. (Irving L. Rollins, Asst. Atty. Gen. of New York, and William Cahn, Dist. Atty., Nassau County, N. Y., on the brief), for respondents-appellees.

Before MOORE, FRIENDLY and KAUFMAN, Circuit Judges.

MOORE, Circuit Judge:

This is an appeal from a denial of a joint petition for a writ of habeas corpus. The three appellants were convicted in the Nassau County Court of conspiracy, coercion and extortion. On appeal in the New York courts, the convictions were affirmed. People v. DeGrandis, 16 A.D. 2d 834, 228 N.Y.S.2d 875, aff'd, 12 N.Y. 2d 812, 236 N.Y.S.2d 63, 187 N.E.2d 130 (1962), cert. denied, 375 U.S. 868, 84 S.Ct. 91, 11 L.Ed.2d 95 (1963). Appellants contend they were denied due process of law because, after delivering a charge of some three and one-half hours, the trial court kept the jury in deliberation for twenty-four consecutive hours, including time taken for meals, during which time the jury twice advised the court of its fatigue. This, say the appellants, perverted the deliberative process and coerced the verdict.

The trial commenced on February 1, 1960 and lasted some three and one-half months. Fifteen defendants under a sixteen count indictment were involved, approximately 125 witnesses testified, over 100 written exhibits were received in evidence and there were over 6,400 pages of transcript. At 9:50 A.M. on May 12, 1960, the jury was convened to receive the charge. The charge was concluded at 1:30 P.M. and the jury retired for lunch, returning to deliberate at 3:00 P.M. At 6:35 P.M. the jury went to dinner at a nearby restaurant, returning to resume deliberation at 8:00 P.M. At 10:40 P.M. the foreman of the jury sent a note to the judge saying:

> "Due to the length of the testimony which must be taken into consideration and while progress has been made, fatigue has set in.
> "Please advise."

The judge's written response was:

> "Please let attendant know if you desire coffee and sandwiches."

Thereupon, the foreman wrote back:

> "We are fatigued and feel we cannot make a decision on all counts tonight. How long should we deliberate tonight?"

The judge penned a brief reply:

> "Continue to deliberate."

At 2:30 A.M. on May 13, 1960, the jury was given sandwiches and coffee. At 4:35 A.M. the judge called the jury back to the courtroom in response to another note he had received from the foreman at 4:10 A.M. saying:

> "We are now at an impasse and due to the lateness of the hour and fatigue of all of us we request a reasonable rest for clear thinking before further deliberation."

The judge addressed the jury:

> "Now, ladies and gentlemen of the jury, we probably could get you bedded down not before 6 o'clock and you would have to be back here at 1 o'clock and having your lunch within that space of time because you would have to get some deliberation in, if you think that is essential.

> "Now, I was just wondering whether you feel you would rather do that or continue deliberating in the hope of reaching a conclusion and continuing.

> "Mr. Foreman, do you feel that you would rather do that or is the impasse so serious that you couldn't resolve it within a reasonable amount of time."

The foreman indicated the jury "would prefer the rest." The judge replied:

"All right. You will return to your rooms and I will direct the Clerk to make suitable arrangement at a hotel. All right, continue your deliberations."

The jury withdrew from the courtroom at 4:40 A.M. and the judge then advised counsel:

"I think counsel should remain available to this Court until we have resolved this question with the hotel and I get these jurors bedded. I don't know whether it is necessary—I don't believe they have to come back to court. We can take them right over."

At 5:00 A.M. the judge recalled the jury and the following colloquy ensued:

"The Court: Ladies and gentlemen of the jury, we have made several calls. Every motel is filled up to capacity, and as far as the Garden City Hotel is concerned, I cannot get proper accommodations. I can probably get four rooms and put cots in every room. Now, I will be willing to do something like that if you feel it is in order.

"The Foreman: Your Honor, may we go back to the jury room and decide on that, and maybe we can give you a better answer when we come back.

"The Court: You can go back to the jury room and stay there as long as you like.

"The Foreman: It won't be that long to give you the answer that you want.

"The Court: Yes. Just remember that you will have to be back here at 1 o'clock with lunch completed or else you won't have any time to deliberate, and perhaps consider whether it might not be worthwhile to deliberate now and stay on for a few extra hours and go home. All right, you may retire."

The jury of ten men and two women, together with two alternate jurors, one male and one female, then withdrew at 5:04 A.M. At 6:10 A.M. the jury requested by note certain exhibits, testimony and further instruction by the judge. At 6:20 A.M. the jury recessed for breakfast at a nearby restaurant, the judge saying that he would read the note after the jury returned from its meal. At 7:10 A.M. the jury returned to the courtroom whereupon the judge gave it additional instructions and acted upon its other requests. At 8:10 A.M. the jury left the courtroom. At 11:50 A.M. the judge recalled the jury and asked if it could "reach a verdict within a reasonable length of time." The foreman replied in the affirmative and the jury withdrew at 11:55 A.M. to deliberate for the last time. Sandwiches and coffee were sent to it at 12:30 P.M. and the jury returned with its verdict at 1:50 P.M. This was approximately twenty-eight consecutive hours, including time taken for meals, after the jury began to receive the charge, twenty-four hours after the case was given to the jury, fifteen hours after the jury sent its first note informing the judge of its fatigue and ten hours after the next note requesting a reasonable rest.

■ Although it would seem to have been foreseeable that the jury might require hotel accommodations, and the judge might have done better to provide even the inadequate ones that were still available in the early morning, the mere fact that a jury has been without sleep will not vitiate its verdict if its agreement was deliberate and voluntary and not due to fatigue and exhaustion. Furthermore, it is significant that instead of pleading fatigue after the 4:10 A.M. message, the jury chose to go on through breakfast and lunch to complete the task assigned to it. Had fatigue so affected their respective judgments as to have prevented them from properly exercising their functions as jurors, they could have so advised the court. No such thoughts were communicated to the court between 4:40 A.M. and the time of the verdict, a period of some nine hours. It

might well be that, figuratively speaking, the jury had gotten its second wind.

Moreover, there is no evidence that the judgment of the jury was not exercised with clarity and discrimination. In fact, of ten defendants still in the case at the end of the trial, the jury found the three appellants guilty on three counts and not guilty on all other counts; two defendants guilty on one count and not guilty on all other counts; four defendants not guilty on all counts; and no verdict because of failure to agree as to one defendant. In this light, given the traditional discretion a trial judge has over the deliberative process of a jury, see Mills v. Tinsley, 314 F.2d 311, 313 (10th Cir. 1963), we cannot say under the facts that appellants' trial was so violative of "fundamental liberties," Townsend v. Sain, 372 U.S. 293, 312, 83 S.Ct. 745, 756, 9 L.Ed.2d 770 (1963), or so "fundamentally lawless," Fay v. Noia, 372 U.S. 391, 423, 83 S.Ct. 822, 840, 9 L.Ed.2d 837 (1963), as to require a reversal of the denial of the writ.

Affirmed.