328 So.2d 18 (1976)
Howard Virgil Lee DOUGLAS, Appellant,
v.
STATE of Florida, Appellee.
No. 44864.
Supreme Court of Florida.
February 18, 1976.
*19 James A. Gardner, Public Defender, and Elliott C. Metcalfe, Jr., Asst. Public Defender, for appellant.
Robert L. Shevin, Atty. Gen., and Richard W. Prospect, Asst. Atty. Gen., for appellee.
*20 JOANOS, JAMES E., Circuit Judge.
The appellant was convicted of murder in the first degree and sentenced to death. Jurisdiction to hear this cause lies in Article V, Section 3(b)(1), of the Constitution of the State of Florida.
The State's primary witness, Helen Atkins, wife of the victim, was apparently present when the crime was committed. She testified as to having met the appellant, Howard Virgil Lee Douglas, and the victim, Jesse "Jay" William Atkins, at about the same time. She lived with the defendant for periods of time before and after her marriage to the victim. She had resumed living together with her husband for some short period of time up to the date of the crime. Her account of the crime is essentially as follows.
On the afternoon of July 16, 1963, Helen Atkins learned that she was being evicted by her landlord from the trailer she rented. She proceeded with the victim to the trailer in the vicinity of Bowling Green, Florida, and gathered up her belongings. On the way back the defendant drove up behind them in his truck and ordered the victim who was driving their automobile to pull over to the side of the road. With the use of a rifle, the defendant required them to proceed in a rather complicated route. At one point the vehicle became stuck. At defendant's direction all three walked to a mine where they got a man to take them back in a truck and free the vehicle. The defendant then required them to proceed to a wooded area near Brewster, Florida. The defendant then made her and the victim undress and perform various sexual acts before him. The defendant then struck the victim in the head with the but of his rifle, with such force that the stock of the rifle was shattered. The defendant then fired three shots into the head of the victim. Helen Atkins was then ordered to perform certain sexual acts upon and with the defendant. The body of the victim was later covered with grass and bushes. It was discovered some five days afterwards by some men out running dogs in the area.
The defendant's main defense was alibi. Several witnesses testified that they had been with or had seen the defendant at various times on the date the crime was said to have been committed.
The jury, after finding the defendant guilty of murder in the first degree, in the separate sentencing procedure recommended a life sentence. The trial judge found that the crime was especially heinous, atrocious and cruel, and that there were no mitigating circumstances, and imposed the sentence of death.
This appeal is from the judgment of guilt and sentence to death.
Defendant first contends that he was deprived of a public and fair trial in violation of the Constitutions of Florida and of the United States. His argument is centered around the method by which Helen Atkins was permitted to testify. When she was called by the State to testify, the State moved that, due to the nature of her testimony, the court ordered the courtroom to be cleared of all except necessary court personnel, the press, and members of the families of the defendant, the victim, and the witness. The basis of the motion was that the nature of the testimony was so embarassing that there was no reason that anybody should hear it unless necessary. The motion was granted over defendant's objection.
In Robertson v. State[1] a criminal proceeding was reviewed in which the general public was excluded except the "court officers, the jury, witnesses, attorneys representing the parties, and all persons directly interested in the case." In affirming the trial court, this court approved the following statement of law, "The exclusion by the court of all persons other than those interested in the case, where, from the *21 character of the charge and nature of the evidence, public morality would be injuriously affected, does not violate the constitutional right to a public trial." We believe that the statement of the law expressed in the Robertson case continues to be correct and is dispositive of appellant's point. The limitation upon courtroom spectators did not render the matter a star-chamber proceeding and there has been no prejudice shown that resulted from the limitation.
Appellant next argues that the trial court erred in allowing an in court identification to be made of appellant by a witness, Leroy Marshall. On cross examination, it was brought out that prior to the trial the witness identified the appellant from a single photograph shown to him. Appellant maintains that the in court identification was tainted by the showing of the single photograph. However, the in court identification by Marshall was not objected to at the trial. Appellate review in the absence of fundamental error requires an objection or motion to have been made before the trial court. State v. Barber.[2] An objection or motion would have given the trial court an opportunity to conduct proceedings to determine whether or not the witness would be permitted to make the in court identification. Without that determination being made, we cannot find that the in court identification was improperly tainted. Beyond that, a study of the record and the evidence does not reflect that the in court identification by the witness Marshall would amount to fundamental error even if appellant could establish that the in court identification by the witness Marshall was improperly affected by the witness being shown the single photograph. The evidence of guilt was much more than adequate. Further the jury had before it evidence as to the conditions under which the witness Marshall had observed the person whom he identified as the defendant and that he had previously identified him from the single photograph. It does not appear that the in court identification by Marshall was of any real significance in the case at all. Under the circumstances it certainly did not constitute fundamental error and may not have been error at all even if an objection or motion had been made.
In his third point, appellant alleges that the trial court erred in denying his motion for new trial based upon newly discovered evidence. Appellant's newly "discovered evidence" was the testimony of a witness, Faye Finkell. We have studied the transcript of the testimony of the witness. We can find no error by the trial court in denying the motion. The court acted appropriately in determining that the new evidence would have been cumulative to that presented at the trial and that it would not have changed the verdict. See Harvey v. State.[3]
Appellant's final point is that the imposition of the death sentence pursuant to the Florida Statutes is in contravention of the United States Constitution and the Constitution of the State of Florida. He cites Furman v. Georgia[4] for the argument that the death penalty cannot be imposed where procedures are employed that permit discretion by judges or jurors. This argument has been rejected by this court first in State v. Dixon[5] and several times since. We see no reason to recede from the Dixon opinion.
This court has the responsibility to review the sentence of death and determine whether or not the punishment is too great. State v. Dixon.[6] The abuse to which the victim was subjected to prior to *22 his death and the manner in which he was killed was especially heinous, atrocious and cruel. The method by which the victim and his wife were taken to the location by a complicated route where the killing occurred reflects a determination to kill. Even getting the vehicle stuck and having to get help to have it freed did not break that determination. The evidence is clear that the murder was committed in a cold and calculated manner. No evidence of mitigation was produced. The trial judge buttressed his decision that the death penalty should be imposed by the inclusion in his findings of fact information from a presentence investigation report which the defendant was given the opportunity to traverse. The report reflected that the defendant was 37 years old and had been previously convicted of a number of felonies including grand larceny, breaking and entering (twice), forgery, and escape (three times) as well as numerous misdemeanors. The defendant had previously received penitentiary sentences aggregating seventeen years and an undesirable military discharge. We conclude, as did the trial judge, that the death penalty is the proper sentence.
Pursuant to Rule 6.16(b), Florida Appellate Rules, we have also reviewed the evidence to determine whether the interests of justice require a new trial. We can find no reversible error and the evidence does not reflect that justice requires a new trial. We find that the judgment and sentence of the trial court is lawful and in accordance with justice.
Accordingly, the judgment and sentence of the Circuit Court are hereby affirmed.
It is so ordered.
ADKINS, C.J., ROBERTS and OVERTON, JJ., and HENSLEY and MELVIN, Circuit Court Judges, concur.
ENGLAND, J., dissents with an opinion.
ENGLAND, Justice (dissenting).
I dissent. Appellant was denied a "public" trial guaranteed to him by the United States and Florida Constitutions.[1]
During the course of appellant's four day jury trial in Polk County, Florida, the State brought 18 witnesses to the stand. One of these, the wife of appellant's homicide victim, was central to the prosecution's case. Decedent's wife was the only eye-witness to the crime. She was called to testify after six other witnesses for the State had appeared before the jury and the public. For her testimony, however, the jury was present but the courtroom was cleared of all spectators except the press, members of decedent's family, the witness' family and the defendant's family. After this activity in the courtroom, decedent's widow was permitted to testify to the events surrounding the homicide. When she left the witness stand, the general public was allowed to re-enter the courtroom for the remainder of the trial. Appellant contends that he did not receive a "public" trial because the general public was excluded from a portion of the trial and the manner of exclusion necessarily precluded a fair trial by focusing attention and sympathy on the widow-witness.
We do not have here the classic nonpublic trial which our jurisprudence has abhorred since the nation was founded. I agree with the majority there was no "Star Chamber" or "Inquisitorial" proceeding where the veracity of testimony was questionable because it was given without exposure to public view. We have instead a more subtle and insidious impairment of appellant's right to a fair public trial; one which the founding fathers may not have envisioned. We have here an erosion of the original concept by incremental attrition  a paring of the term "public" to mean something less than all the public.
*23 The majority opinion construes Robertson v. State[2] too broadly in finding it controlling here. That case concerned limiting the right to public trial where there would be adverse affects upon public morality. No one has ever suggested such a rationale for the exclusion of the public here.[3] The trial judge undoubtedly acted from compassion for the widow-witness. His exclusion of the general public may have been well motivated and his sympathetic reaction may even have been well-founded, but his concern was misdirected. Solicitude for a witness cannot justify sacrifice of a criminal defendant's constitutional guarantees. The credibility of a witness is given official emphasis when a trial judge relieves the witness of "embarrassment because she is `called upon to testify to the story of the defendant's crime and her shame.'"[4]
Obviously, we can never know whether the widow-witness would have testified to different facts or in a different manner had the general public been permitted to observe her presentation. Nor can we know whether chance observers who might have been in the courtroom (if not excluded) would have come forward with other facts or evidence. Because there is no manner by which prejudice can be shown nor discounted, the constitutional rule must be applied absolutely.[5]
The overwhelming weight of evidence tending to show the appellant's guilt notwithstanding, I believe that a new trial must be conducted in which appellant is accorded his full constitutional right to a public trial. The slightest invasion of that right today is but a prelude to more extensive erosions of the Constitutions' guarantee.
NOTES
[1] 64 Fla. 437, 60 So. 118 (1912).
[2] 301 So.2d 7 (Fla. 1974).
[3] 87 So.2d 582 (Fla. 1956).
[4] 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972).
[5] 283 So.2d 1 (Fla. 1973).
[6] Supra.
[1] U.S.Const. Amend. VI; Fla. Const., art. I, § 16.
[2] 64 Fla. 437, 60 So. 118 (1912).
[3] The continuing validity of Robertson is not appropriately at issue in this case, though it is subject to scrutiny. See, United States v. Kobli, 172 F.2d 919 (3d Cir.1949).
[4] Tanksley v. United States, 145 F.2d 58, 59, 10 Alaska 443 (9th Cir.1944).
[5] Davis v. United States, 247 F. 394 (8th Cir.1917).