UNITED STATES of America ex rel. Rico LATIMORE and Arthur Vesey, Petitioners-Appellants,

v.

Allyn R. SIELAFF, etc., et al., Respondents-Appellees.

Nos. 77–1135, 77–1136.

United States Court of Appeals, Seventh Circuit.

Argued April 29, 1977.

Decided Aug. 26, 1977.

Rehearing and Rehearing En Banc Denied Oct. 20, 1977.

---

Allen L. Wiederer, Elgin, Ill., James Geis, Deputy State Public Defender, Chicago, Ill., for petitioners-appellants.

Gerri Papushkewych, Springfield, Ill., William J. Scott, Atty. Gen., Chicago, Ill., for respondents-appellees.

Before CASTLE, Senior Circuit Judge, and SWYGERT and SPRECHER, Circuit Judges.

CASTLE, Senior Circuit Judge.

█ Petitioners were among four defendants convicted of rape in a joint trial before a jury in the Circuit Court of Saline County, Illinois. They seek a writ of habeas corpus on two grounds. First, they assert that their right to a public trial was denied by the exclusion of spectators during the testimony of the alleged victim. Second, they assert that the trial judge coerced the jury to return a verdict by failing to provide sleeping facilities at the jurors' request.[1] The district court denied the petition. We affirm.

I.

We turn first to the question of whether petitioners were denied the right to public trial. After the State called the alleged victim, a 21-year-old unmarried woman, as its ninth and last witness, the trial judge ordered the bailiff to clear the courtroom of spectators. He asked the following persons to remain: the jury and alternates, the defendants, their attorney, the State's attorney, the clerk, the reporter, the bailiff and the sheriff. He also asked anyone who wished to remain give his name and his reason for staying. He gave a minister permission to remain "because of her position in the community and because of whom she represents." He made clear that members of the press were welcome, "but a person who has come out of curiosity only or who is concerned only with the progress of the case and desire to hear the testimony of this witness [is] excluded."

█ The public trial guarantee of the Sixth Amendment[2]

1. Petitioners raised these issues on direct appeal from their convictions. The Illinois Appellate Court rejected their arguments, *People v. Latimore*, 33 Ill.App.3d 812, 342 N.E.2d 209 (1975), and the Illinois Supreme Court denied leave to appeal. Petitioners therefore were not required to process a petition under the Illinois Post-Conviction Hearing Act, Ill.Rev.Stat. ch. 38, § 122–1, before seeking relief from the district court. *United States ex rel. Anthony v. Sielaff*, 552 F.2d 588 (7th Cir. 1977); *United States ex rel. Williams v. Brantley*, 502 F.2d 1383 (7th Cir. 1974).

2. The public trial guarantee is applicable to the states by reason of the due process clause of the Fourteenth Amendment. *Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968); *In re Oliver*, 333 U.S. 257, 68 S.Ct. 499,

has always been recognized as a safeguard against any attempt to employ our courts as instruments of persecution. The knowledge that every criminal trial is subject to contemporaneous review in the forum of public opinion is an effective restraint on possible abuse of judicial power.

*In re Oliver*, 333 U.S. 257, 270, 68 S.Ct. 499, 92 L.Ed. 682 (1948). The action of the trial judge did not create any potential for secret abuse of the judicial power. Clearing the courtroom of spectators during the testimony of the complaining witness did not remove the trial proceedings from the forum of public opinion. Even in that part of the trial, the press and others with substantial interest in knowing what transpired were permitted to remain or to enter the courtroom.

■■■ It is well-recognized that the interest of a defendant in having ordinary spectators present during trial is not an absolute right but must be balanced against other interests which might justify excluding them. *United States v. Eisner*, 533 F.2d 987, 993 (6th Cir.), *cert. denied*, 429 U.S. 919, 97 S.Ct. 314, 50 L.Ed.2d 286 (1976); *United States ex rel. Lloyd v. Vincent*, 520 F.2d 1272, 1274 (2d Cir.), *cert. denied*, 423 U.S. 937, 96 S.Ct. 296, 46 L.Ed.2d 269 (1975). The propriety of the trial court's action depends on the circumstances of each case. *Aaron v. Capps*, 507 F.2d 685, 687 (5th Cir.), *cert. denied*, 423 U.S. 878, 96 S.Ct. 153, 46 L.Ed.2d 112 (1975). Because the public trial guarantee not only prohibits secrecy but also reflects a preference for an open forum, prejudice to the defendant is implied whenever the trial judge lacks substantial justification for excluding spectators, and an affirmative showing of harm is unnecessary to establish a violation of the defendant's right to public trial. *United States v.*

*Kobli*, 172 F.2d 919 (3d Cir. 1949); *Tanksley v. United States*, 10 Alaska 443, 145 F.2d 58 (1944); *Davis v. United States*, 247 F. 394 (8th Cir. 1917).

■■■ In *Harris v. Stephens*, 361 F.2d 888, 891 (8th Cir. 1966), *cert. denied*, 386 U.S. 964, 87 S.Ct. 1040, 18 L.Ed.2d 113 (1967), the Eighth Circuit noted that exclusion of spectators during the testimony of an alleged rape victim "is a frequent and accepted practice when the lurid details of such a crime must be related by a young lady."[3] *See Douglas v. State*, 328 So.2d 18 (Fla.), *cert. denied*, 429 U.S. 871, 97 S.Ct. 185, 50 L.Ed.2d 151 (1976); *State v. Purvis*, 157 Conn. 198, 251 A.2d 178 (1968), *cert. denied*, 395 U.S. 928, 89 S.Ct. 1788, 23 L.Ed.2d 246 (1969); *Ex parte Rudolph*, 276 Ala. 392, 162 So.2d 486, *cert. denied*, 377 U.S. 919, 84 S.Ct. 1185, 12 L.Ed.2d 188 (1964); *Price v. State*, 496 S.W.2d 103 (Tex. Cr.App.1973). Primary justification for this practice lies in protection of the personal dignity of the complaining witness.[4] The Supreme Court has recognized that, short of homicide, rape is the "ultimate violation of self." *Coker v. Georgia*, —— U.S. ——, 97 S.Ct. 2861, 2868, 53 L.Ed.2d 982 (1977). It is characterized by an

> almost total contempt for the personal integrity and autonomy of the female victim and for the latter's privilege of choosing those with whom intimate relationships are to be established.

*Id.* Rape constitutes an intrusion upon areas of the victim's life, both physical and psychological, to which our society attaches the deepest sense of privacy. Shame and loss of dignity, however unjustified from a moral standpoint, are natural byproducts of an attempt to recount details of a rape before a curious and disinterested audience. The ordeal of describing an unwanted sexu-

---

92 L.Ed. 682 (1948); *United States ex rel. Bennett v. Rundle*, 419 F.2d 599 (3d Cir. 1969).

**3.** In *Harris*, the Eighth Circuit rejected an argument that the clearing of the courtroom during the testimony of a 23-year-old alleged rape victim demonstrated that community sentiment was so hostile that the defendants could not receive a fair trial without a change of venue.

**4.** The practice also has been justified on the ground that it protects public morality. *See Douglas v. State*, 328 So.2d 18, 20–21 (Fla.), *cert. denied*, 429 U.S. 871, 97 S.Ct. 185, 50 L.Ed.2d 151 (1976).

al encounter before persons with no more than a prurient interest in it aggravates the original injury. Mitigation of the ordeal is a justifiable concern of the public[5] and of the trial court.[6]

Recognition that protection of the dignity of the complaining witness is a substantial justification for excluding spectators does not end our inquiry. Protection of the complaining witness from potential embarrassment does not justify any perceptible increase in the likelihood that the defendant might be convicted. The presence of this justification merely eliminates the implication as a matter of law that the defendant was prejudiced by the exclusion of spectators and leads us to the question of whether the defendant actually was prejudiced by that action.

Petitioners have not asserted that any prejudice resulted to their defense as a result of the exclusion of spectators, and our examination of the record has revealed none. The action did not reflect or suggest any partiality on the part of the trial judge. The circumstances of the case do not suggest any reasonable possibility that the spectators might have included an unknown witness. We do not believe the gaze of curious and disinterested spectators would have prompted the witness to be truthful to any appreciable degree beyond the encouragement provided by the oath, the presence of the defendants and the possible testimony of other witnesses. We therefore conclude that the trial judge's action was both justified and proper and that it did not violate the petitioners' right to public trial.

Petitioners cite in support of their position *Tanksley v. United States, supra,* in which the Ninth Circuit held that the exclusion of spectators throughout a rape trial, in which the 19-year-old alleged victim was one of nine witnesses, violated the defendant's right to public trial. *Tanksley* is not inconsistent with our holding in this case. The exclusion of spectators may not exceed the scope necessary to serve the legitimate purpose for which the trial judge acted. *United States v. Kobli, supra; Davis v. United States, supra.* The Ninth Circuit subsequently highlighted the sweeping nature of the trial court's order in *Tanksley* as a distinguishing factor of that decision in *Geise v. United States,* 262 F.2d 151, 156 (9th Cir. 1958), *cert. denied,* 361 U.S. 842, 80 S.Ct. 94, 4 L.Ed.2d 80 (1959). In *Geise,* the Ninth Circuit held that the exclusion of spectators in a rape trial during the testimony of witnesses age seven, nine and eleven, one of whom was the complaining witness, did not violate the defendant's right to public trial. Like *Tanksley,* the state court holdings cited by the petitioners involve the exclusion of spectators throughout the course of trial. See *State v. Schmit,* 273 Minn. 78, 139 N.W.2d 800 (1966); *Thompson v. People,* 156 Colo. 416, 399 P.2d 776 (1965); *People v. Byrnes,* 84 Cal.App.2d 72, 190 P.2d 290 (1948). The exclusion order in the instant case was not overbroad. Spectators were excluded only during the testimony of the alleged victim.

The *Geise* court also distinguished *Tanksley* on the ground that the earlier case did not involve a child. We perceive no justifiable reason for holding that a trial judge's power to protect a wit-

5. It has often been reported that only a minor fraction of the rapes that occur actually are reported. *See* Berger, "Man's Trial, Woman's Tribulation: Rape Cases in the Courtroom," 77 Col.L.Rev. 1, 5 (1977); Comment, "Rape and Rape Laws: Sexism in Society and Law," 61 Calif.L.Rev. 919, 921 (1973). The public has an interest in encouraging the reporting of the crime and, conversely, in mitigating the ordeal of the victim who does report it.

6. *Cf. Alford v. United States,* 282 U.S. 687, 694, 51 S.Ct. 218, 220, 75 L.Ed. 624 (1931) (recognition of the trial court's duty to protect witness

in cross-examination from questions which "go beyond the bounds of proper cross-examination merely to harass, annoy or humiliate him").

It has been argued that an exclusion of spectators to protect the complaining witness from potential shame and embarrassment rests on a presumption that the defendant is guilty. *See Tanksley v. United States,* 10 Alaska 443, 145 F.2d 58, 59 (1944). We disagree. A move to protect the alleged victim from the threat of indignity does not require or imply an *a priori* determination that she is truthful in her accusation.

ness from indignity is limited to children. In light of the relative maturity of the complaining witness in this case, the better course would have been for the trial judge to hold an evidentiary hearing before deciding that the witness needed the protection granted. However,

> [t]he standard to be applied in determining whether there is a sufficient record to support [an exclusion of spectators] is whether there has been an abuse of discretion. *United States ex rel. Lloyd v. Vincent, supra,* 520 F.2d at 1275.

*United States v. Eisner, supra,* 533 F.2d at 994. The indictments in this case accused four young men of having raped the complaining witness, a 21-year-old unmarried woman at the time of trial, on February 21, 1972. At the time the State called the complaining witness, it had adduced strong circumstantial evidence that the alleged rapes had occurred in a single incident. We cannot say that the trial judge abused his discretion by concluding that the prospect of testifying about the alleged incident before a full audience posed a substantial threat of indignity to the witness.

## II.

■ We next turn to the question of whether the trial judge coerced the jury to return a verdict. The jury retired after two and one-half days of testimony to consider a verdict at 4:35 p. m. on September 27, 1972. About five hours later, the jurors asked if they might communicate with the judge. The judge replied, in a memorandum read to the jurors by the bailiff, "The judge cannot communicate with the jurors; you must continue with your deliberations." At about 10:25 o'clock, the foreman of the jury beckoned the bailiff and in general terms told him that the jurors did not think they would be able to arrive at a verdict and that they would like to be bedded down for the night. The judge did not reply to this request. The jury returned verdicts

finding petitioners guilty at 3:22 o'clock the next morning.

In *Jenkins v. United States,* 380 U.S. 445, 446, 85 S.Ct. 1059, 1060, 13 L.Ed.2d 957 (1965), the Supreme Court reversed a federal conviction on the ground that the judge's conduct toward the jury "in its context and under all the circumstances . . . had [a] coercive effect." [7] Applying that test to the instant case, we find the trial judge's conduct to be noncoercive.

The communications from the jurors did not state or imply that they were deadlocked or that fatigue was interfering with their ability to continue deliberations. A fair reading of the 10:25 o'clock communication indicates that the jurors wished to suspend deliberations for the night because a verdict was not immediately within reach. They did not express a desire to terminate deliberations permanently. Viewed in light of these communications, the trial judge's silence did not imply that the jurors were required to arrive at a verdict. It merely implied what he had expressly stated earlier, that they were required to continue deliberating.

■ Ordinarily, the length of time a jury may be kept together for deliberation is a matter for the sound discretion of the trial judge. *Mills v. Tinsley,* 314 F.2d 311, 313 (10th Cir.), *cert. denied,* 374 U.S. 847, 83 S.Ct. 1907, 10 L.Ed.2d 1067 (1963); *United States v. Minieri,* 303 F.2d 550 (2d Cir.), *cert. denied,* 371 U.S. 847, 83 S.Ct. 79, 9 L.Ed.2d 81 (1962). The time a jury may be compelled to deliberate is necessarily limited by the prohibition against forcing the jury to agree upon a verdict. *See Mills v. Tinsley, supra* at 313. The question presented is whether the efforts of the trial judge to secure a verdict placed such pressure on the jurors that at least one of them might have surrendered views that he or she conscientiously entertained. *United States v. Thomas,* 146 U.S.App.D.C. 101, 449

---

**7.** In *United States ex rel. Anthony v. Sielaff,* 552 F.2d 588, 590 n.1 (7th Cir. 1977), we reserved the question of whether the *Jenkins* standard was a constitutional one applicable in habeas corpus cases or merely a standard for the administration of the federal courts, because we found the conduct of the judge to be noncoercive under that standard. We again reserve the question for the same reason.

F.2d 1177, 1181 (1971). Requiring a jury to deliberate into the early morning hours does not constitute such pressure as a matter of law.

> [T]he mere fact that a jury has been without sleep will not vitiate its verdict if its agreement was deliberate and voluntary and not due to fatigue and exhaustion.

*DeGrandis v. Fay*, 335 F.2d 173, 175 (2d Cir. 1964). In the absence of any expression from the jury that fatigue was interfering with the progress of the deliberations, the late hour at which they returned the verdict does not create any inference that one or more of them might have surrendered conscientious views to arrive at the verdict. We therefore cannot say that the trial judge abused his discretion in keeping the jury together until that time.

### III.

For the reasons stated above, the judgment of the district court denying the petitions for writ of habeas corpus is affirmed.

AFFIRMED.

SWYGERT, Circuit Judge, dissenting.

The trial of this case commenced on September 25, 1972 and lasted through September 27. At 9:00 a. m. on the second day of the trial the jury heard defense testimony and then prosecution rebuttal evidence. Following closing arguments the trial judge gave his instructions. The jury retired to deliberate at 4:35 p. m. At 9:27 that night it asked to confer with the judge. He refused to inquire what the jury desired; instead he instructed the bailiff to read the following note to its members: "The judge cannot communicate with the jurors; you must continue with your deliberations." At 10:25 p. m. the jurors announced that they could not reach a verdict and would "like to be bedded down for the night." There was no response from the judge. The jury then continued its deliberations until it reached a verdict at 3:22 a. m. on September 28 after having continuously deliberated for eleven hours.

In my judgment the trial judge improperly coerced the jury and forced a verdict. As a consequence the defendants (petitioners) were denied a fair trial and their constitutional right to due process.

When the jurors attempted to communicate with the judge they were told they could not do so. When they asked for sleeping facilities they received no response. After these rebuffs the jurors had no choice but to continue their deliberations. Their only hope for release from virtual imprisonment in the jury room was to reach a verdict. The fact that they deliberated eleven hours before agreeing to a verdict is a strong indication that one or more had serious doubts about the defendants' guilt.

Assuming that the jurors had awakened at approximately 7:00 a. m. on the morning of the twenty-seventh, they were kept awake until 3:30 a. m. on the twenty-eighth, a total of twenty and one-half hours. This protracted stretch of duty constituted coercion under compulsion on the part of the judge. As the Supreme Court of Iowa said in *State v. Albers*, 174 N.W.2d 649, 656 (1970), "under such circumstances the premium is on stamina and physical strength rather than judgment." There is no significant difference between forcing a verdict as happened in this case and expressly telling the jury, "You must reach a decision," which the Supreme Court condemned as coercive in *Jenkins v. United States*, 380 U.S. 445, 85 S.Ct. 1059, 13 L.Ed.2d 957 (1965).

The majority reasons: "In the absence of any expression from the jury that fatigue was interfering with the progress of the deliberations, the late hour at which they returned the verdict does not create any inference that one or more of them might have surrendered conscientious views to arrive at the verdict." I submit that the absence of a third communication specifically mentioning fatigue is no excuse for refusing to recognize the coercion visited upon the jury when it was twice rebuffed in its attempt to communicate with the trial judge. Moreover, one of the notes did specifically ask for sleeping facilities. Upon what basis could the jury reasonably con-

clude that subsequent attempts to communicate with the judge would be successful? The majority's treatment of the facts is much too bland; it does not grapple with their reality. Instead of faulting the jurors for not attempting to complain further, this court should condemn the state trial judge for his insensitive and arbitrary attitude.

We mouth the ideals of our American jury system in affording fair trials and procedural due process. Yet in concrete cases, such as this, those ideals are allowed to be compromised and tarnished. I deplore the resulting disillusionment, the irony, the broken promise.

I would reverse and grant the writ.